505 So.2d 933 (1987)
STATE of Louisiana, Appellee,
v.
Jesse MILLS, Appellant.
No. 18447-KA.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1987.
Writ Denied June 12, 1987.
*938 Culpepper, Teat, Caldwell & Avery by Jimmy C. Teat, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Charles B. Bice, Dist. Atty., Winnfield, for appellee.
Before HALL, JASPER E. JONES and NORRIS, JJ.
JASPER E. JONES, Judge.
The defendant, Jesse Mills, was charged by grand jury indictment with one count of aggravated burglary in violation of LSA-R.S. 14:60, nine counts of aggravated rape in violation of LSA-R.S. 14:42, two counts of aggravated crime against nature in violation of LSA-R.S. 14:89.1, one count of armed robbery in violation of LSA-R.S. 14:64 and two counts of attempted second degree murder in violation of LSA-R.S. 14:30.1 and LSA-R.S. 14:27. A jury found defendant guilty as charged on each count. The trial judge imposed the maximum sentence for each offense and ordered the sentences for each offense to be served consecutively with each other sentence imposed. Defendant appeals relying upon forty-six assignments of error for reversal of his convictions and sentences. We affirm.

The Facts
In the early morning hours of June 2, 1985 the defendant entered the victim's mobile home by removing a screen and climbing through an unlocked window. After entering, defendant proceeded to a bedroom where he observed the victim asleep. Defendant obtained a butcher knife from the kitchen and returned to the victim's bed where he got on top of her and covered her head with a pillow. When the victim attempted to escape, defendant cut her hand and face, threatened to kill her and told her to remove her panties. The victim again resisted and defendant cut her several times on the leg. Thereafter the defendant, while in various rooms of the mobile home vaginally raped the victim seven times, anally raped her two times and forced her to commit two acts of fellatio upon him. The defendant also robbed the victim. In addition, defendant brutally attacked the victim two times with the knife inflicting multiple and severe wounds to her arms, head and face. Defendant subsequently fled and the victim summoned help from a neighbor. She was taken to a local hospital and subsequently transported by air ambulance to a hospital in Alexandria where she underwent about thirteen hours of surgery.
While at the local hospital in Winnfield, the victim was examined by Dr. Iglesias. Analysis of a vaginal swab and vaginal washings revealed the presence of fresh spermatozoa.
Defendant was arrested on July 2, 1985 and gave a recorded statement to Deputy Greg Davies of the Winn Parish Sheriff's Department wherein he confessed to the crimes.
The victim identified defendant as her assailant at trial and in pre-trial photographic and physical line-ups.
Assignments of Error Nos. 1, 2, 3 & 9 Motion to Quash the Indictment
By these assignments of error, defendant contends the trial court erred in denying *939 his motion to quash the indictment on the following grounds:
1) LSA-R.S. 14:89 is unconstitutional;
2) the indictment fails to allege with specificity which subsection of LSA-R.S. 14:42 he was charged with;
3) the crimes charged constitute double jeopardy; and
4) the indictment fails to state the essential facts constituting the offense charged, contains a misjoinder of offenses and is duplicitous.
Unconstitutionality of LSA-R.S. 14:89
Defendant argues the definition of crime against nature in LSA-R.S. 14:89 as "the unnatural carnal copulation by a human being with another of the same sex or opposite sex" is vague, ambiguous and unconstitutional.
LSA-R.S. 14:89 has consistently been held constitutional. State v. Bonanno, 163 So.2d 72 (La.1964); State v. Bluain, 315 So.2d 749 (La.1975); State v. Picchini, 463 So.2d 714 (La.App. 4th Cir.1985), writ den., 468 So.2d 1202 (La.1985). For this reason, the trial judge committed no error in denying defendant's motion to quash on this ground.
Specificity of Indictment Under LSA-R.S. 14:42
Defendant argues the indictment fails to allege with specificity which subsection of LSA-R.S. 14:42 he was being charged with.
LSA-R.S. 14:42 defines aggravated rape. The record reflects the rape charges were in accordance with the short form indictment under LSA-C.Cr.P. art. 465(A)(39). In addition, the state responded to defendant's motion for a bill of particulars indicating the prosecution was based on LSA-R.S. 42(A)(1), (2) and (3).
Therefore, defendant was adequately informed of the nature and cause of the accusations against him. State v. Baylis, 388 So.2d 713 (La.1980); State v. Kohler, 434 So.2d 1110 (La.App. 1st Cir.1983). The trial judge was correct in denying defendant's motion to quash on this ground.

Double Jeopardy
Defendant contends the use of a dangerous weapon is an integral part of each of the offenses with which he was charged and conviction of any one offense would bar prosecution for any other offense on the basis of double jeopardy.
No person can twice be put in jeopardy for the same offense. Amendment V, U.S. Const.; Article I, § 15, La. Const. (1974); LSA-C.Cr.P. art. 591; State v. Knowles, 392 So.2d 651 (La.1980).
Whether two offenses are the same for the purposes of double jeopardy is determined by the test established in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932):
"... The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not...."
This rule is constitutionally required by the states, Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) and is embodied in LSA-C.Cr.P. art. 596:
"Double jeopardy exists in a second trial only when the charge in that trial is: (1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial."
Louisiana uses both the "Blockburger test" and the "same evidence test." State v. Steele, 387 So.2d 1175 (La.1980); State v. Knowles, supra.
The Louisiana Supreme Court explains the "same evidence test" in State v. Steele, supra, as follows:
"If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a *940 plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial."
Double jeopardy provisions protect an accused not only from a second prosecution on the same offense, but also from multiple punishments for the same criminal conduct. State v. Vaughn, 431 So.2d 763 (La.1983).
In the instant case, defendant was charged with nine counts of aggravated rape, one count of aggravated burglary, two counts of aggravated crime against nature, one count of armed robbery and two counts of attempted second degree murder.
Aggravated burglary is defined in LSA-R.S. 14:60 as follows: Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
Aggravated rape is defined in LSA-R.S. 14:42 as follows:
A. "Aggravated rape is a rape commited where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
(5) When two or more offenders participated in the act."
In order to prove the crime of aggravated burglary, the state must prove beyond a reasonable doubt defendant made an unauthorized entry of the victim's home with the intent to commit a theft or felony. Additionally, the state must prove beyond a reasonable doubt one of the three aggravating circumstances listed in LSA-R.S. 14:60.
As the state need only prove intent to commit a felony within the victim's home at the moment of unauthorized entry and not the actual felony itself, it is apparent that the crimes of aggravated burglary and aggravated rape do not contain identical elements. State v. Anderson, 343 So.2d 135 (La.1977); State v. Kirkley, 470 So.2d 1001 (La.App. 1st Cir.1985), writ den., 475 So.2d 1105 (La.1985). In addition, in this case, evidence necessary to support a finding of guilty of aggravated burglary would not also have supported conviction of aggravated rape. The state was only required to prove one of the three aggravating circumstances listed in LSA-R.S. 14:60 and the record clearly indicates defendant entered the victim's residence and armed himself with a dangerous weapon after entering.
Although the crimes of aggravated crime against nature, armed robbery and attempted second degree murder also involved the use of a dangerous weapon, the evidence required to support a finding of guilt of any one of them would not support a conviction for the other, as each require proof of an additional fact the other does not.
Defendant was not placed twice in jeopardy for the same offense and the trial judge committed no error in denying the motion to quash on this ground.

Misjoinder of offenses, Duplicity and Essential facts
Defendant argues the indictment fails to state the essential facts constituting the *941 offenses, the indictment is duplicitous in charging more than one offense of the same count, the indictment contains a misjoinder of offenses and the indictment was neither endorsed a true bill nor signed by the foreman.
As we pointed out in our discussion under the previous assignments of error, the rape charges in accordance with the short form indictment coupled with the state's response to defendant's motion for a bill of particulars, sufficiently informed defendant of the nature and cause of the accusations against him concerning rape. The other charges against defendant were also in accordance with the short form indictment and the state's response to defendant's motion for a bill of particulars indicates the statutes for each crime upon which the prosecution was based with the exception of armed robbery. Additionally, the minutes of the hearing on the motion for a bill of particulars reflect that defense stated he was satisfied with the state's response. Defendant was, therefore, adequately informed of the nature and cause of the accusations against him for all offenses. State v. Balis, supra. The trial judge was correct in denying defendant's motion to quash on this ground.
We find no merit to defendant's contention that the indictment was neither endorsed a true bill nor signed by the foreman. A review of the indictment shows it was endorsed a true bill and signed by the foreman. The trial judge was, therefore, correct in denying defendant's motion to quash on this ground.
These assignments of error lack merit.
We will treat defendant's argument on misjoinder of offenses and duplicity in our analysis of assignment of error No. 8.

Assignment of Error No. 4
By this assignment of error defendant contends the trial court erred in denying his motion for a change of venue.
LSA-C.Cr.P. art. 622 provides:
"A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial."
The burden is on the defendant to prove there exists such a prejudice in the collective minds of the people in the community that a fair and impartial trial is impossible. State v. Bell, 315 So.2d 307 (La.1975); State v. Brogdon, 426 So.2d 158 (La.1983). Although the trial court possesses a broad range of discretion in this area, we are required to make an independent evaluation of the facts to determine whether the accused received a fair trial, unfettered by outside influences. State v. Willie, 410 So.2d 1019 (La.1982); State v. David, 425 So.2d 1241 (La.1983).
In the instant case, the record does not include a transcript of the hearing on defendant's motion for a change of venue. This deficit was pointed out to the defendant's attorney at oral argument and the record has not been supplemented to include this transcript. The minutes, however, reflect defendant and the state questioned eight members of the community, who were selected at random, at the hearing on the motion. In addition, defense counsel introduced in evidence four articles from the Winn Parish Enterprise relating to the instant offenses.
Our review of the record, including the colloquy between the attorneys and potential jurors on voir dire, fails to show the existence of prejudice in the public mind which would deprive defendant of a fair and impartial trial.
This assignment lacks merit.

Assignment of Error No. 5
By this assignment defendant contends the trial court erred in denying the motion to recuse the trial judge, Honorable Douglas H. Allen, on the ground he was an assistant district attorney and previously *942 prosecuted defendant on an aggravated rape charge in 1980. Defendant argues his motion in arrest of judgment was granted on this conviction because the state failed to prove an essential element of the crime. For these reasons, defendant contends his motion to recuse should have been granted.
LSA-C.Cr.P. art. 671 provides in pertinent part:
"In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
...
(3) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter's employment in the cause;
(4) Is a material witness in the cause;
(5) Has performed a judicial act in the case in another court; or
(6) Would be unable, for any other reason, to conduct a fair and impartial trial."
A trial judge is presumed to be impartial. State v. Edwards, 420 So.2d 663 (La.1982); State v. Murphy, 463 So.2d 812 (La.App.2d Cir.1985), writ den., 468 So.2d 570 (La.1985). For an accused to be entitled to the recusation on the grounds of bias, prejudice and personal interest, such bias, prejudice and personal interest must be of a substantial nature based on more than mere conclusionary allegations. State v. Qualls, 377 So.2d 293 (La.1979); State v. Murphy, supra.
In the instant case, defendant's pretrial motion to recuse was referred to another judge for determination. The record contains only the court minutes of the hearing and no transcript of actual testimony. Nothing in this record supports defendant's contention that Judge Allen was biased or prejudiced against him. To the contrary, the trial judge's conduct during trial demonstrates no prejudice. See State v. Maduell, 326 So.2d 820 (La.1976). In addition, all issues of fact pertaining to guilt or innocence were tried by a jury and not the trial judge. State v. Austin, 258 La. 273, 246 So.2d 12 (1971). For these reasons, the trial judge committed no error in denying defendant's motion to recuse.
This assignment lacks merit.
Assignments of Error Nos. 6, 7, & 21 Motion to Suppress Confession, Motion in Limine
By these assignments, defendant contends the trial court erred in denying his motion to suppress his confession and in granting the state's motion in limine suppressing all references to the polygraph examination at trial. Defendant further contends, the trial court erred in refusing to allow Trooper Kavanaugh to be questioned as to the polygraph exam taken by defendant.
Defendant contends that prior to his arrest, the police requested him to submit to a polygraph examination. He avers that at the conclusion of the test he was informed he passed, but Officer Davies later informed him he had failed the test and urged him to confess. Defendant testified Deputy Davies supplied him with written answers for his confession, he was threatened with bodily harm if he refused to confess and he was not allowed to use the telephone until after giving the recorded statement. For these reasons, defendant contends his confession was involuntary. He asserts he should have been allowed to question Officer Kavanaugh about the circumstances surrounding the polygraph exam. The defendant further argues he should have been permitted to testify about the circumstances surrounding the polygraph examination.
The trial judge granted the state's motion in limine and ordered defendant, his attorney and the state to refrain from any reference to the polygraph examination.
Before the state may introduce a confession into evidence, it must affirmatively show the statement was freely and voluntarily given. LSA-R.S. 15:451; LSA-C.Cr.P. art. 703; State v. Maiden, 463 So.2d 848 (La.App. 2d Cir.1985). The question of voluntariness of a confession must *943 be determined by the trial judge from the facts and circumstances of the particular case. State v. Serrato, 424 So.2d 214 (La. 1982). His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned on appeal unless unsupported by the evidence. State v. Burkhalter, 428 So.2d 449 (La.1983); State v. Maiden, supra.
Polygraph evidence is inadmissible for any purpose in criminal trials in Louisiana. State v. Catanese, 368 So.2d 975 (La.1979); State v. Hocum, 456 So.2d 602 (La.1984).
In the instant case, the record reflects defendant was arrested just before noon on July 2, 1985. He was taken to the Winn Parish Sheriff's Department where Deputy Davies advised him of his Miranda rights and had him sign a Miranda card at 12:15 p.m. Defendant was first questioned by Deputies Ford and Powell and later by Deputy Davies, who took some handwritten notes. Defendant was again advised of his Miranda rights and at 5:37 p.m. on the same day he gave a recorded confession.
Deputy Davies testified he allowed defendant to use the telephone and he did not intimidate, coerce or threaten him. Deputy Ford testified he did not mistreat defendant or receive any complaints from defendant about being mistreated. Defendant's confession indicates he was advised of and understood his rights and he had not been threatened, coerced, or, or mistreated by Deputy Davies.
The trial judge apparently concluded the confession was given freely and voluntarily based on the facts and circumstances. The judge accorded greater weight to the credibility of the police officers than the defendant in arriving at his finding. Our review of the record reveals no error in the trial judge's determination that the confession was made freely and voluntarily.
Because polygraph evidence is inadmissible in a criminal trial in Louisiana, the trial judge was correct in granting the state's motion in limine and ordering the parties to refrain from any reference to the polygraph examination.
These assignments lack merit.

Assignment of Error No. 8
By this assignment of error, defendant contends the trial court erred in denying his motion to sever the offenses. He contends the number and complexity of the charges confused the jury and resulted in substantial prejudice to him. Defendant further contends the indictment is duplicitous in that it charges him with more than one offense in the same count.
Two or more offenses may be charged in the same indictment under LSA-C.Cr.P. art. 493 which provides:
"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial."
Where the offenses joined are part of the same transaction, the critical question is whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. LSA-C.Cr.P. art. 495.1[1]; State v. Carter, 412 So.2d 540 (La.1982).
The defendant was charged with five types of offenses. In one fifteen count indictment the offenses charged were aggravated burglary, aggravated rape, aggravated crime against nature, armed robbery and attempted second degree *944 murder. All offenses were connected in a continuous series of events occurring within approximately one hour and all within the victim's home. Only one victim was involved and her testimony constituted the essence of the state's case. The victim related in simple terms and with the use of visual aids the consecutive events constituting each of the crimes charged and the elements thereof. Her testimony effectively compartmentalized each crime charged and could be easily comprehended by the jury. The trial judge carefully explained the elements of each crime to the jury.
We further note evidence of the crimes committed by defendant, as part of a continuous criminal transaction, would be admissible at trial as part of the res gestae. LSA-R.S. 15:447; 15:448; State v. Kaufman, 331 So.2d 16 (La.1976); State v. Carter, supra.
For these reasons, the trial judge committed no error in denying defendant's motion for a severance of offenses.
We further conclude the trial court committed no error in denying defendant's motion to quash the indictment on the ground of duplicity.
Duplicity is the charging of more than one distinct crime in one count of an indictment. State v. Simpson, 464 So.2d 1104 (La.App. 3d Cir.1985).
Our review of the record reveals the state did not charge more than one distinct crime in any one count of the indictment.
These assignments lack merit.

Assignment of Error No. 10
By this assignment defendant contends the trial court erred in denying his motion for sequestration of jurors on voir dire. He argues permitting some of the prospective jurors to listen to the answers of others may have prejudiced his rights.
The manner in which the veniremen are called and the scope of the examination are left to the trial court's discretion. LSA-C. Cr.P. art. 784 comment (c); LSA-C.Cr.P. art. 786; State v. Berry, 391 So.2d 406 (La.1980); State v. Monroe, 397 So.2d 1258 (La.1981). The burden is, therefore, on the defendant to show the trial judge abused his discretion in refusing to sequester the venire during voir dire. State v. Willie, supra.
In the instant case, the responses of the prospective jurors during voir dire appears to have been a fair and honest reflection of impartiality and not tainted by the trial court's failure to sequester the venire during voir dire. Defendant has failed to show an abuse of the trial court's discretion.
This assignment lacks merit.

Assignments of Error Nos. 11, 12, 13, 14, 15 & 16
By these assignments, defendant contends the trial court erred in denying his challenge for cause of four prospective jurors and in excusing one prospective juror as unqualified to serve.
A defendant may assign as error the trial judge's refusal to sustain his challenge of a juror for cause provided he timely objects stating the nature and grounds of the objection. LSA-C.Cr.P. art. 800(A); State v. Isaac, 487 So.2d 565 (La.App. 4th Cir.1986).
A determination of the qualifications of a juror is within the sound discretion of the trial court. State v. Edwards, 419 So.2d 881 (La.1981); State v. Pettaway, 450 So.2d 1345 (La.App. 2d Cir.1984), writ den., 456 So.2d 151 (La.1984).
In the instant case, defendant timely objected to the trial judge's failure to sustain his challenge for cause of the following jurors:

Mrs. Willie Doughty
Mrs. Doughty was challenged for cause when she stated she would hold defendant's failure to testify against him.
The record reflects the trial judge explained to Mrs. Doughty defendant's privilege against self incrimination and she ultimately stated she would not hold defendant's silence against him.
A charge of bias may be removed by rehabilitation of a prospective juror. State v. Shea, 421 So.2d 200 (La.1982); State v. Broadway, 440 So.2d 828 (La.App. 2d Cir.1983).
*945 Mrs. Doughty was rehabilitated by the trial judge when she demonstrated the ability and willingness to decide the case impartially according to the law and evidence. The trial judge was correct in denying defendant's challenge for cause of Mrs. Doughty.

Ms. Gardner & Mr. Teal
Ms. Gardner was challenged for cause when she stated she was a friend of defendant's family and the victim's mother previously served as her supervisor where they worked.
Mr. Teal was challenged for cause when he stated he was a close personal friend of the victim's family.
LSA-C.Cr.P. art. 797 provides in pertinent part:
"The state or the defendant may challenge a juror for cause on the ground that:
...
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict; ..."
The fact that a prospective juror knows the victim of an offense is not in itself a ground for a challenge for cause under Article 797. There must be a showing that the relationship would influence a juror in arriving at a verdict. State v. Blanton, 312 So.2d 329 (La.1975); State v. Clark, 340 So.2d 208 (La.1976).
The record reflects that both Ms. Gardner and Mr. Teal stated their relationship with the victim would not influence them in arriving at a verdict. For this reason, the trial judge was correct in denying defendant's challenge for cause of these prospective jurors.

Ms. Riffe
Ms. Riffe was challenged for cause when she stated she was completely deaf in her left ear and would be prejudiced because defendant was black and the victim was white.
The trial judge is vested with great discretion in determining whether a juror suffering from a physical infirmity is competent to serve as a juror. State v. Reed, 206 La. 143, 19 So.2d 28 (1944); State v. Willis, 262 La. 636, 264 So.2d 590 (1972).
The trial judge questioned Ms. Riffe about her hearing and was satisfied she was competent to serve. After the trial judge further explained to her a juror's duty to decide the case on the law and evidence, she stated she would decide the case on the law and evidence and without regard to race.
For these reasons, the trial judge committed no abuse of discretion in denying defendant's challenge for cause of this prospective juror.

Mr. Smith
Defendant contends the trial court erred in excusing Mr. Will Smith on the grounds he only had an eighth grade education and possibly could not read and write.
LSA-C.Cr.P. art. 401 A(3) provides that in order to qualify as a juror, one must be able to read, write and speak the English language.
The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law. LSA-C.Cr.P. art. 800(B); State v. Wilson, 467 So.2d 503 (La.1985).
In the instant case, the minutes reflect the state only used five of its twelve peremptory challenges.[2] For this reason, even *946 assuming the trial court erroneously allowed the state this challenge for cause, defendant is not afforded a ground for complaint. State v. Wilson, supra.
These assignments lack merit.

Assignments of Error Nos. 17, 18, 30 and 31
By these assignments, defendant contends the trial court erred by admitting into evidence and allowing the jury to view pictures designated as exhibits S-37, S-3, and S-38 through S-45(A) on the ground the prejudicial effect of the pictures outweighs their probative value.
Exhibit S-3 depicts the outside and inside areas of the victim's home where the offenses occurred. The state maintains it was relevant to show the scene of the crime. Exhibit S-37 reflects the cuts on the victim's right leg and the state contends it was necessary to support the charges of aggravated rape. Exhibits S-37(A) through S-45(A) depict the cuts to the victim's hand, head and arms and the state contends they were necessary to support the charges of attempted second degree murder.
The test of admissibility of alleged gruesome photographs is whether their probative value outweighs the possible prejudice which may result from their display to the jury. State v. Lewis, 353 So.2d 703 (La.1977); State v. Mathews, 354 So.2d 552 (La.1978).
In the instant case, the photographs were necessary to depict the crime scene, prove defendant had the specific intent to kill and support the victim's testimony of resistance. See State v. Sinclair, 258 La. 84, 245 So.2d 365 (1971) and State v. Sheppard, 350 So.2d 615 (La.1977). The photographs are not overwhelmingly gruesome. Under these circumstances, we cannot say their probative value was outweighed by their possible prejudice.
These assignments lack merit.

Assignments of Error Nos. 19, 20 & 34
By these assignments, defendant contends the trial court erred in allowing a knife, a pair of shoes and two white blood-stained socks to be introduced into evidence because the state failed to lay a proper foundation and chain of custody.
Relevancy of proffered evidence depends on whether it tends to prove or disprove a material fact at issue. LSA-R.S. 15:435; State v. Constantine, 364 So.2d 1011 (La. 1978).
To admit demonstrative evidence at trial, the law requires that the object be identified. Identification need not be absolute, certain or wholly unqualified. Where there is some evidence for identification purposes, objection to the sufficiency goes to the weight rather than admissibility. For admission, it suffices if the preponderance of the evidence establishes it is more probable than not the object is connected with the case. State v. Sharp, 414 So.2d 752 (La.1982); State v. Dunn, 452 So.2d 304 (La.App. 2d Cir.1984), writ den., 457 So.2d 18 (La.1984).
In the instant case, after defendant gave his recorded statement at the Winn Parish Sheriff's Office, he rode with Deputy Davies and two other officers to the victim's trailer. While on their way, defendant directed the officers through the route he traveled to and from the victim's home on the morning of the offenses. Defendant revealed where he disposed of a knife and a pair of white socks he had on his hands when the offenses were committed.[3] The victim testified defendant cut her with a knife and identified S-16 as her "Old Hickory" butcher knife. In addition, the state established the knife was stained with type `O' blood and the victim had type `O' blood. The knife was found in the vicinity where defendant stated he threw it. These facts establish it was more probable than not the knife was connected with the case and the trial judge committed no error in admitting it in evidence.
*947 The victim also testified she believed her assailant was wearing socks on his hands when he committed the offenses. Defendant told Deputy Davies he had white socks on his hands and they were found in the vicinity where he stated he disposed of them. The socks were stained with type `O' blood. All these facts establish it was more probable than not that the socks were connected with the case and the trial judge committed no error in admitting them in evidence.
The victim testified her assailant was wearing off-white, rubber soled, canvas, lace-up shoes. Mr. Lane, a forensic scientist and criminologist, testified he photographed partial shoe prints on top of and around a garbage can and on the victim's back porch. Mr. Lane further testified exhibit S-5, a pair of off-white canvas shoes, appeared to have the same tread design as the one which left the prints on the garbage can and around the victim's back porch. The trial judge admitted the shoes in evidence over defendant's objection.
We conclude the trial judge erred in admitting the shoes in evidence. Deputy Davies testified the shoes were purchased at Wal-Mart and the shoes which the assailant wore were never recovered. The state failed to prove it was more probable than not the shoes were connected with the case. However, we conclude the error was harmless. An error is harmless if there is little likelihood that it would have changed the result. LSA-C.Cr.P. art. 921; State v. Borning, 477 So.2d 134 (La.App. 1st Cir. 1985), writ den., 481 So.2d 1330 (La.1986).
In the instant case, the jury knew the shoes were not the shoes the assailant was wearing. We conclude this error would not have changed the result in light of the other evidence connecting defendant with the offenses.
These assignments lack merit.
Assignments of Error Nos. 22, 23, 24, 25, 26, 28, & 29
By these assignments of error, defendant contends the trial court erred in allowing Deputy Davies to testify to exhibit S-26, a Miranda rights sheet, admitting in evidence S-27 on the testimony of Deputy Davies, allowing Deputy Davies to read certain statements made by defendant, allowing exhibit S-28 to be introduced in evidence, permitting Deputy Davies to answer questions about statements made by defendant and in allowing the jury to see copies of exhibit S-29, handwritten notes taken by Deputy Davies.
Exhibit S-26, a Miranda rights sheet, was read to defendant when he was arrested and he signed it. The references to other crimes on this sheet were deleted and copies were given to the jury. Defendant argues this exhibit is an altered document which was used in connection with other and unrelated charges.
Deputy Davies testified he read defendant S-26 upon his arrest, defendant signed it and confessed later the same day.
Where a document offered in evidence is a mechanical reproduction of the original, admission over objection is reversible error only upon a showing that the contents of the purported copy does not accurately reflect the contents of the original. State v. McDonald, 430 So.2d 151 (La.App. 2d Cir.1983).
In the instant case, S-26 was offered in evidence to show defendant was given his Miranda rights. It was altered to delete the reference to other crimes. The document otherwise accurately reflects the contents of the original and the trial judge committed no error in admitting it in evidence.
Exhibit S-27 was the handwritten notes of statements made by defendant to Deputy Davies who testified he took them at about 5:30 p.m., just before defendant agreed to give a taped statement. Defendant contends the exhibit is hearsay and the state failed to show he was advised of his Miranda rights when the statements were made.
Exhibit S-28 was the original taped statement given by defendant to Deputy Davies and S-28(A) was a transcript of the taped statement. Defendant objected to S-28 on the lack of a proper foundation and *948 to S-28(A) as being hearsay and not the best evidence.
Defendant acknowledged in his taped statement being advised of his Miranda rights. A confession is an exception to the hearsay rule. State v. Lockett, 319 So.2d 420 (La.1975). S-27 and S-28 were, therefore, properly admitted in evidence.
Providing the jury with a copy of S-28(A), a transcript of the taped confession, was also proper. See State v. Burdgess, 434 So.2d 1062 (La.1983) and State v. Snedecor, 294 So.2d 207 (La.1974).
S-29 consisted of two pages of handwritten notes of statements made by defendant to Deputy Davies at 10:40 a.m. on July 3, 1985, at the LaSalle Parish Sheriff's Office. Defendant contends S-29 is hearsay. Davies testified he advised defendant of his Miranda rights before he made these statements confessing to the crimes. The trial court properly admitted S-29 in evidence because a confession is an exception to the hearsay rule. State v. Lockett, supra.
Exhibits S-30 and S-31 were maps of the City of Winnfield upon which Deputy Davies took notes as defendant took him on the route taken to and from the victim's home. Defendant objected to Deputy Davies testifying as to defendant's statements made while he was showing him the route he took to and from defendant's home. Defendant argues he was not advised of his Miranda rights prior to making these statements. Deputy Davies testified defendant gave his recorded confession after the defendant agreed to accompany Davies and two other officers to the crime scene. Davies further testified it was at this point defendant described the route he took to and from the victim's home on the morning of the crimes.
There is no requirement that Miranda warnings be given or repeated each time an arrestee is questioned, absent some showing of coercion on the part of the police. State v. Harvill, 403 So.2d 706 (La.1981); State v. Williams, 262 La. 160, 262 So.2d 507 (1972).
The statements by defendant on the way to the victim's home were given immediately after he gave his recorded confession and to the same officer to whom he gave his recorded confession. Defendant does not allege he was coerced into making these statements and Deputy Davies testified defendant volunteered the information. For these reasons, the trial court committed no error in admitting the testimony.
These assignments lack merit.

Assignment of Error No. 27
By this assignment, defendant contends the trial court erred in allowing Deputy Davies to testify as to defendant's flight as he was leaving his parent's home with the officers. Defendant argues this evidence was irrelevant and prejudicial.
Evidence of flight is relevant and indicates a consciousness of guilt. It is one of the circumstances from which the jury may infer guilt. LSA-R.S. 15:441; State v. Wilkerson, 403 So.2d 652 (La.1981); State v. Davies, 350 So.2d 586 (La.1977). The trial court committed no error in allowing Deputy Davies to testify as to defendant's flight.
This assignment lacks merit.

Assignment of Error No. 32
By this assignment, defendant contends the trial court erred in allowing Deputy Davies to testify as to "any reaction" of defendant after talking about the "Taylor" case. Defendant argues Deputy Davies was permitted to give inadmissible opinion testimony.[4]
*949 Prior to presenting a confession or statement to the jury, the state must introduce evidence concerning the circumstances surrounding the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement. LSA-C.Cr.P. art. 703(G). The question of voluntariness of a confession, including a defendant's state of mind, must be resolved from the facts and circumstances in the particular case. State v. Serrato, supra.
In the instant case, Deputy Davies testified after defendant confessed, he thanked Davies and hugged his neck. We conclude this evidence was relevant to show facts and circumstances surrounding defendant's confession, including his state of mind. See State v. Williams, 383 So.2d 369 (La. 1980).
This assignment lacks merit.

Assignment of Error No. 33
By this assignment, defendant contends the trial court erred in allowing Deputy Davies to testify as to what the victim told him. Defendant argues the testimony was inadmissible hearsay.[5] Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. State v. Junegain, 324 So.2d 438 (La.1975); State v. Walker, 344 So.2d 990 (La.1977). Hearsay evidence is inadmissible unless subject to one of the exceptions. LSA-R.S. 15:434.
Hearsay testimony relating to a confession or an admission is admissible under a widely recognized exception to the hearsay rule. LSA-R.S. 15:499 et seq.; State v. Lockett, supra; State v. Walker, supra.
The statement was related to Deputy Davies by defendant as part of his confession and was admissible as an exception to the hearsay rule.
This assignment lacks merit.

Assignment of Error No. 35
By this assignment, defendant contends the trial court erred when it permitted the state to introduce exhibits S-38 and S-39 due to the lack of a proper foundation.
S-38 is a black and white mug shot of defendant taken upon his arrest. S-39 is a color photograph of defendant in a line-up with an `x' marked above his head.
The trial judge admitted these exhibits with the understanding that the Winn Parish Sheriff's Office identification tag on the mug shot would be covered up and the state would lay the proper foundation before they were shown to the jury. The state opted not to call a witness to establish when the photographs were taken and they were never shown to the jury.
LSA-C.Cr.P. art. 773 provides:

*950 "Neither the state nor the defendant can be controlled by the court as to the order in which evidence shall be adduced; but when the evidence requires a foundation for its admission, the foundation must be laid before the evidence is admissible."
In the instant case, we question whether the photographs were ever introduced in evidence. The trial judge ordered that they be marked for identification and the district attorney agreed to cover up the police identification tag on the mug shot and lay the proper foundation before they were given to the jury. The photographs were never given to the jury and the provisions of Article 773 were not violated. See State v. Sheppard, 350 So.2d 615 (La.1977). Even if the photographs were admitted without foundation, defendant was not prejudiced because the exhibits were not shown to the jury.
This assignment lacks merit.

Assignments of Error Nos. 36, 37 and 39
By these assignments, defendant contends the state was permitted to question the victim and James Forrest beyond the scope of proper rebuttal. Defendant argues the state improperly reserved part of its case in chief for rebuttal and James Forrest was permitted to testify as to hearsay.
Rebuttal evidence is that which is offered to explain or counter facts given in evidence by the adverse party. State v. Trosclair, 443 So.2d 1098 (La.1983); State v. Huizar, 414 So.2d 741 (La.1982). Control of evidence presented by the state on rebuttal is within the sound discretion of the trial judge whose ruling will not be disturbed on appeal except in extreme cases as where the evidence has been held back deliberately and for the purpose of deceiving and obtaining an undue advantage. State v. Turner, 337 So.2d 455 (La. 1976); State v. Williams, 445 So.2d 1171 (La.1984).
In the instant case, the victim testified on direct that her assailant wore red gym shorts. Defendant testified he did not own any red gym shorts when the offenses were committed. Defendant's mother testified on direct she did not see defendant come home on the morning of the offenses and denied telling James Forrest defendant was not wearing any clothes when he came home.
Mr. James Forrest was called by the state on rebuttal and testified he had seen defendant wearing red gym shorts. He further testified, over a hearsay objection, that defendant's mother told him defendant came home on the morning of the offenses and took a shower, but he apparently had no clothes on because she did not find any in the bathroom.
We conclude the questions posed by the state to Mr. Forrest were within the scope of proper rebuttal. The questions were posed to rebut defendant's testimony that he did not own a pair of red gym shorts. They were further designed to rebut the testimony of defendant's mother wherein she denied seeing defendant come home on the morning of the offenses and thought he had no clothes on.
Defendant made a hearsay objection to the testimony of Mr. Forrest concerning the statements made to him by defendant's mother. The trial judge overruled the objection.
We conclude the trial judge erred in allowing Mr. Forrest to testify as to the out of court statements made by defendant's mother. LSA-R.S. 15:434. However, in light of the overwhelming evidence against the defendant, we conclude this error was harmless. LSA-C.Cr.P. art. 921; State v. Humphrey, 412 So.2d 507 (La.1981).
The state called the victim on rebuttal to counter the testimony of defendant and his mother that defendant shaved his pubic hair in mid May and not in June after the offenses were committed. Dr. Iglesais testified on direct that he examined defendant subsequent to June 2, 1985, and defendant's pubic hair had been recently shaved. The victim testified on rebuttal, over objection, that her assailant had pubic hair.
We conclude the question posed to the victim was not beyond the scope of proper *951 rebuttal. It was designed to counter the testimony of defendant and his mother that defendant shaved his pubic hair in May and not in June, 1985.
These assignments lack merit.

Assignment of Error No. 38
By this assignment, defendant contends the trial court erred in allowing Deputy Davies, on rebuttal, to refresh his memory from exhibit S-29.
Exhibit S-29 consisted of the handwritten notes taken by Deputy Davies on July 3, 1985, at the LaSalle Parish Sheriff's Office.
A witness may examine memoranda to refresh his present memory provided that after such inspection, he can testify to the fact. LSA-R.S. 15:279; State v. Knapp, 378 So.2d 911 (La.1979); State v. Burch, 261 La. 3, 258 So.2d 851 (1972).
Deputy Davies prepared the notes reflected upon exhibit S-29. After using it to refresh his memory, he was able to testify as to certain statements made by defendant. The trial court, therefore, committed no error in allowing Deputy Davies to refresh his memory from the notes he took on July 3, 1985.
This assignment lacks merit.

Assignments of Error Nos. 40, 41 & 43
By these assignments, defendant contends the trial court erred in allowing the jury to view evidence while in deliberation and refusing to grant a mistrial on the ground of improper closing argument by the district attorney.
The record reflects while the victim was being assaulted in her bathtub, defendant struck the faucet with the knife leaving a cut upon the faucet. The state introduced the faucet and the knife into evidence. Mr. Lane, the state's criminologist, testified he did not perform any scientific tests on the knife or faucet, but by placing the knife in the cut on the faucet, it could be inferred that the knife caused the cut.
In closing argument, the district attorney stated:
"I looked at the knife and I looked at the faucet and I tried to put the knife point in and it wouldn't fit. But when you put it in a transverse angle like that ... I watched Mr. Smith do that about 3 times and it slipped right in there. And it slipped right in there where the notch in the knife was and it fit. As you get back there ask him about that."[6]
The jury was permitted, over defendant's objection, to take the knife, faucet, several photographs and other items of physical evidence into the deliberating room.
Defendant contends the district attorney's closing comments about Mr. Smith's test warranted a mistrial. He further contends allowing the jury to view evidence while in deliberation was prejudicial and constituted reversible error.
LSA-C.Cr.P. art. 774 provides in pertinent part:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case."
While a prosecutor must base his conclusions and deductions upon the evidence adduced at trial under Article 774, both the state and defense are entitled to their own conclusions as to what is established by the evidence and may press upon the jury any view arising out of the evidence. State v. Moore, 432 So.2d 209 (La. 1983); State v. Clark, 387 So.2d 1124 (La. 1980). A conviction will not be reversed because of improper closing argument, unless the remarks influenced the jury and contributed to the verdict. State v. Sharp, 418 So.2d 1344 (La.1982); State v. Moore, supra.
A jury, during deliberation, may inspect physical evidence in order to arrive at a verdict, but it may not inspect written evidence to assess its verbal contents. LSA-C.Cr.P. art. 793; State v. Perkins, 423 So.2d 1103 (La.1982); State v. Passman, 345 So.2d 874 (La.1977).
The district attorney's comments about what Mr. Smith did with the knife *952 and faucet was permissible under Article 774. The knife and faucet were introduced in evidence and, although Mr. Lane did not perform any tests which would positively link these items of evidence, he testified it could be inferred that the knife caused the cut in the faucet. The prosecutor was, therefore, entitled to press upon the jury the conclusion that the knife made the cut in the faucet.
The jury was permitted to view several items of physical evidence during deliberation. The trial judge ordered any writings on these physical items removed. Under the unambiguous terms of Article 773, the jury was permitted to view this evidence.
These assignments lack merit.

Assignment of Error No. 42
By this assignment, defendant contends the trial court erred in allowing the state, during closing argument, to read the statement allegedly made by defendant.
We have set forth the scope of proper scope of closing argument in our disposition of the previous assignments of error.
In the instant case, the recorded statement made by defendant had been admitted in evidence and played for the jury. For this reason, the district attorney did not exceed the scope of proper closing argument by reading defendant's statement again. LSA-C.Cr.P. art. 774; See State v. Atkins, 360 So.2d 1341 (La.1978).
This assignment lacks merit.

Assignment of Error No. 44
By this assignment, defendant contends the trial court erred in allowing the state to dictate the manner in which the court described the exhibits the jury was permitted to view while in deliberation.
The record reflects defense counsel objected to the jury being permitted to view some of the physical evidence while in deliberation. Defendant made no objection to the manner in which the court described and arranged these exhibits for the jury's study.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. LSA-C.Cr.P. art. 841; State v. Kahey, 436 So.2d 475 (La.1983).
This assignment lacks merit.

Assignment of Error No. 45
By this assignment, defendant contends the trial court erred in denying his motion for a new trial. Defendant argues the evidence establishes the victim had intercourse, but does not establish she had been raped. Defendant further contends, in support of his motion for a new trial, he should have been permitted to testify he was misinformed as to the results of his polygraph test as a circumstance surrounding his confession.
A motion for a new trial must be granted when the verdict is contrary to the law and the evidence. LSA-C.Cr.P. art. 851(1).
Appellate review of a trial court's denial for a motion for a new trial based on an assertion that the verdict is contrary to the law and the evidence is limited to the question of whether the trial judge has properly exercised his discretion in that regard. State v. Caminita, 411 So.2d 13 (La.1982); State v. Humphrey, 445 So.2d 1155 (La. 1984).
Rape is defined as the act of anal or vaginal sexual intercourse with a male or female who is not the spouse of the offender, committed without the person's lawful consent. LSA-R.S. 14:41(A).
In the instant case, the victim testified defendant was not her spouse and he forced her to have both anal and vaginal intercourse with him. Dr. Iglesias testified his examination of the vaginal swab and vaginal washings of the victim revealed the presence of spermatozoa.
This evidence establishes not only that the victim had sexual intercourse but that she was also raped. The trial judge did not abuse his discretion in denying defendant's motion for a new trial on this ground.
Although polygraph results are inadmissible in Louisiana criminal trials either as substantive evidence or as relating to the credibility of a party or witness, they are admissible in post trial proceedings *953 within judicial discretion and subject to certain guidelines. State v. Catanese, supra; State v. Humphrey, supra. In assessing the legal merits of a motion for new trial, the trial judge is accorded considerable latitude in evaluating the reliability of the evidence and its potential impact on the verdict. For this reason his ruling on appeal will not be disturbed absent a clear showing of abuse of discretion. State v. Fuller, 414 So.2d 306 (La.1982).
In the instant case, there was no testimony at the motion for a new trial concerning the circumstances surrounding the polygraph examination.[7] The record, therefore, shows no abuse of the trial judge's discretion in denying defendant's motion for a new trial on this ground.
This assignment lacks merit.

Assignment of Error No. 46
By this assignment, defendant contends each sentence imposed by the trial court was excessive.
The sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983), writ den., 439 So.2d 1074 (1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir. 1983); State v. Square, 433 So.2d 104 (La. 1983).
A sentence is constitutionally excessive in violation of Louisiana Constitution of 1974 Art. 1, § 20 if it is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La. App. 2d Cir.1983), writ den., 438 So.2d 1112 (1983).
The sentencing guidelines of LSA-C.Cr.P. art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ den., 435 So.2d 438 (1983); State v. Sepulvado, 367 So.2d 762 (La.1979). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in LSA-C. Cr.P. art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Hammonds, supra; State v. Cunningham, supra; State v. Smith, 433 So.2d 688 (La.1983).
Maximum sentences are generally reserved for the most serious violation of the charged offense and the worst kind of offender. State v. Guajardo, 428 So.2d 468 (La.1983).
Concurrent rather than consecutive sentences are the general rule for multiple convictions arising out of a single course of criminal conduct. LSA-C.Cr.P. art. 883; State v. Underwood, 353 So.2d 1013 (La.1977). However, even if convictions arise out of a single course of conduct, consecutive sentences are not necessarily excessive. State v. Ortego, 382 So.2d 921 (La.1980), cert. den., 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980). Other factors must be taken into consideration in determining whether to impose consecutive sentences, such as where the offender poses an unusual risk to the safety of the public. State v. Jett, 419 So.2d 844 (La.1982).
In the instant case, defendant received the maximum penalty for each offense. *954 The trial judge ordered the sentences to be served consecutively. The trial judge had no discretion in sentencing defendant on the aggravated rape charges as these sentences are imposed by statute. LSA-R.S. 14:42. The trial judge, therefore, only had discretion in sentencing defendant on the charges of attempted second degree murder, aggravated crime against nature, armed robbery and aggravated burglary.
The trial judge ordered a presentence report before imposing sentence. At the sentencing proceeding, the trial judge noted defendant was convicted of aggravated battery in 1979 and in 1980 was convicted of forcible rape, but a motion for a new trial was granted on this latter charge.[8] The trial judge further noted defendant was convicted in 1980 and 1981 of simple criminal damage to property and that criminal charges were pending against defendant at the present time.[9] The trial judge stated defendant was in need of maximum imprisonment and anything less would deprecate the seriousness of the offenses. The trial judge felt defendant's conduct was totally deliberate and senseless and deemed it animalistic.
We conclude the trial judge's compliance with Article 894.1 was minimal. Although the trial judge articulated some aggravating circumstances, he failed to list any mitigating circumstances such as defendant's good work record. However, the trial judge's failure to comply with Article 894.1 does not require reversal where the record clearly illumines the sentencing choice. State v. Williams, 397 So.2d 1287 (La. 1981); State v. Griffin, 455 So.2d 681 (La. App. 2d Cir.1984), writ den., 458 So.2d 128 (La.1984).
The record in this case clearly illumines the sentencing choice. The defendant invaded the privacy and dignity of the victim's home and body and brutally assaulted her with the butcher knife. The victim has endured several operations on her hand and she will require surgery in the future. Defendant is the worst kind of offender and imposes a threat to the safety of the public. For these reasons, we cannot say the sentences are nothing more than a needless and purposeless imposition of pain and suffering and the trial judge committed no error in imposing maximum and consecutive sentences.
This assignment lacks merit.
For the foregoing reasons, defendant's sentences and convictions are affirmed.
AFFIRMED.
NOTES
[1] LSA-C.Cr.P. art. 495.1 provides:

"If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."
[2] LSA-C.Cr.P. art. 799 provides in pertinent part:

"In trial of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the state twelve for each defendant."
In the instant case, all of the offenses defendant was charged with are necessarily punishable by imprisonment at hard labor.
[3] The knife and socks had previously been recovered by the Winn Parish Sheriff's Department.
[4] The following testimony was elicited from Deputy Davies:

Q. "After he talked to you about the Taylor case would you describe his reaction?
BY MR. CULPEPPER: Your Honor, I don't know how he could describe his reaction and I don't know what is material or pertinent of what his reaction may have been even if he could describe it.
Q. Did he seem relieved?
BY THE COURT: Just ...
A. He did.
Q. And what did he ...
BY MR. CULPEPPER: We've made an objection that ...
BY THE COURT: Just ... just a minute.
BY MR. CULPEPPER: ... Your Honor had not ruled on ...
BY THE COURT: Just a minute.
BY MR. CULPEPPER: ... prior to any answer, Your Honor.
BY THE COURT: Just ...
BY MR. CULPEPPER: We would still make the same objection.
BY THE COURT: The objection is overruled and noted.
Q. Again, what did he do after he finished giving you the statement?
A. He stood up, thanked me for listening, walked around the desk and hugged my neck.
[5] The following testimony was elicited from Deputy Davies:

Q. "Is there one thing in the statement that Mr. Mills gave to you that is recorded that no one knew in connection with this investigation but you?
A. Miss Taylor had told me ...
BY MR. CULPEPPER: Your Honor, we would have to object to what she told him unless there is some foundation laid for it."
...
BY MR. CULPEPPER: "Your Honor, we would renew the objection that this gentleman cannot testify as to what Miss Taylor may have told him.
BY THE COURT: The objection is overruled and noted. Go ahead Mr. Bice.
Q. Let me rephrase the question. Mr.... Deputy Davies, don't tell us what Miss Taylor told you. Just answer my question. Is there anything in that statement that was given to you by Jessie Mills that no one knew except you and perhaps someone that had afforded you information about it.
A. That is correct.
Q. Would you tell the Jury again what was mentioned in the taped statement about the object?
A. Mr. Mills told me that Wanda Taylor had tried to give him a credit card."
[6] Mr. Smith was a juror.
[7] The guidelines set forth by the trial judge in State v. Cantanese, supra, at p. 976, note 1, are the following:

I. A competent examiner ...
II. A calibrated machine.
III. A subject relaxed to the extent that the test is valid ...
IV. A competent pre-test interview ...
V. A meaningful area of inquiry involved ...
VI. One question, at least, that threatens the well-being of the subject ...
VII. At least one control question in the technique...
VIII. Short answers. (preferably `yes' or `no').
IX. A low-key, quiet approach by the examiner throughout.
X. At least two charts with proper labeling and responses ...
XI. The charts made available to the other side sufficiently in advance of the trial ...
[8] The presentence report reflects defendant's conviction for forcible rape was overturned on a technicality.
[9] The presentence report reflects defendant had charges of aggravated kidnapping and simple escape pending against him at the time of trial.